John Zahnen, Plaintiff and Appellant, v. Lane Bottling Works, Defendant and Appellee.

Master and servant: NEGLIGENCE: DIRECTION OF VERDICT. Where the only ground of negligence charged, in an employee's action for injuries, was the furnishing of defective and unsuitable tools, and the evidence conclusively showed that the tools furnished were those

ordinarily used in that kind of work, and no defects were disclosed in any of them, a verdict for defendant was properly directed; and where the alleged defective tools were exhibited in evidence and the method of their use described the appellate court in reviewing the evidence will give some weight to the ruling of the trial court.

*Appeal from Woodbury District Court.*—HON. WM. HUTCHINSON, Judge.

FRIDAY, FEBRUARY 13, 1914.

ACTION at law by an employee against his employer for personal injuries sustained while engaged in his employment. At the close of the evidence for the plaintiff, the trial court directed a verdict for the defendant.    The plaintiff appeals.— *Affirmed.*

*Henderson & Fribourg,* for appellant.

*Yeaman & Smith,* for appellee.

EVANS, J.—It does not appear from the petition in what business the defendant was engaged.    We infer, however, with the help of some evidence, that it was engaged in bottling soft drinks.    At the time of his injury the plaintiff was engaged in "pulling a stopper from what is known as a pop bottle." The bottle broke and cut the hand of the plaintiff and inflicted severe injuries upon him.    The negligence charged against the defendant is that it failed to furnish plaintiff "safe and ordinary tools and appliance with which to do his work."    The evidence of plaintiff shows that he was furnished with three tools known as "an extractor, a pair of nippers or pinchers, and a vise."    There was no defect in any of these tools.    They were the ordinary tools in use.    The plaintiff was instructed as to their appropriate use.    The first two being principally used and the vise being used for exceptional purposes "two or three times a week."

One witness testified for plaintiff as follows:

Q. You may now tell what is the ordinary and usual way of removing that stopper. A. Well, the ordinary and usual way was the way this attorney showed you a while ago; yes, that is the ordinary way— Q. Yes, to use— A. To use sleeve hooks to get the stopper up, and then take the pinchers, that is the ordinary way. Q. What would be the danger of using the pinchers? A. Well, don't hardly know as there would be any real danger, unless the bottle was cracked that they were using. . . . Q. Is there any danger of a bottle breaking by pulling the cork out with the pinchers? A. Well, sir, I don't know as there is or not. Bottles break in so many ways. I couldn't hardly describe it. I don't know of any of the boys ever getting cut from pulling the stoppers out with the pinchers. Of course they don't do that of course while—because the other was in place. Q. I will ask you to examine these tools (indicating), and state whether or not those are the ordinary tools? A. Those are the ordinary tools that they had. Q. Used in establishments of that kind? A. Yes, sir. Q. And is it not a fact that the device you had there of which you have just spoken is a little device that you manufactured yourself for your own convenience? A. Yes, sir, I made it myself. Q. And, as a matter of fact, it is not in use anywhere else except with the Chestermans, is it? A. Not that I know of.

The plaintiff testified as follows:

Q. Now, I will ask you to look at this instrument and tell the jury what that is. A. Yes, sir. A stopper extractor. Q. Was that furnished you by the Lane Bottling Works? A. Yes, sir. Q. And what did you use that for? A. To pull the stoppers after they fell in the bottle. Q. I will ask you what this is (indicating). A. That is a pair of nippers. Q. And what do you use them for? A. Those are used to pull out those stoppers. Q. After you got them so that you could get hold of them with the nippers—with this thing (indicating)? A. No, sir. The only time we used this thing was when the stopper was half in and half out, and this here (indicating) we used when they fell in. Q. But you would pull them up with this until you could get hold of them with the nippers,

isn't that it? A. If the stoppers would go down into the bottle, we would go to work and use these and pull out the rubber, and then the stopper would fall out by itself. . . . Nipper and stopper extractor identified and offered in evidence without objection. The plaintiff was requested to demonstrate (the vise, nippers, and stopper extractor being offered in evidence without objection of plaintiff) just how the injury occurred. Witness is handed a pop bottle which is admitted to be similar to that which he was handling when the injury occurred, the stopper being half in and half out of the bottle. Q. Now you say when you put the bottle in the vise, what did you put in the vise, just the wire here, this way (indicating)? A. The wire, yes, sir. Q. And when you put a soft board under here (indicating)? A. Yes, sir. Q. And pulled the bottle toward you? A. Pry it; shove it away from you that way (indicating). Q. You start to pulling it? A. No shoving it (indicating). Q. Where would you put the board, on the side toward you or on the other side? A. On the other side. Q. And then you pushed it that way (indicating)? A. Yes, sir. Q. You could just as well pull it up putting the board on that side this way (indicating)? A. Yes, sir, just the same thing. Q. Which were you doing at the time? A. I was shoving it. . . . Q. Now just show us how the injury occurred. A. The bottle broke something like that, and then this (indicating) came over and the hand went down and the bottle hit my arm. Juror: Which way are you pushing that? A. Just shoving it over (indicating), shoving it away from me. Q. Now then, put that board on this side of the vise once. Q. Now, then, supposing the cork being fastened in the vise like that, you would put the board there, you were working on that side, and you pulled the bottle toward you? A. Yes, sir. Q. Now in pulling the bottle toward you would there be any possibility of your getting hurt, if you pulled the bottle that way? A. You would be liable to cut your fingers, that is all. Q. Do you mean to tell the jury now that this vise was given to you by the Lane Bottling Works for the purpose of extracting corks? A. Well, it could be used for what we could use it for. Q. I believe that you testified that this extractor was used to bring the stopper from the bottom of the bottle up to the top, is that correct? A. No, sir. That was to pull the stoppers out after they had fell in that way (indicating)—old stoppers. Q. And that was the purpose of the nippers also,

was it? A. Yes, sir. Q. And I think that you also testified that the vise was also furnished you for the same purpose? A. Yes, sir. Q. On the day on which you received your injury were you able to find either the extractor or the pinchers, and, if not, why not; and what, if anything, did you say with reference to that before you went to work with the vise? A. I could not find the pinchers, but I found the other, and the other couldn't be used for that kind of work, so I used the vise. Q. What, if anything, did you say to Mr. Tushall when you couldn't find the pinchers? A. I asked him where the pinchers was, and he said they are around there some place, and if I can't find that do something yourself, to use the same way. Q. You say you were unable to use the extractor? A. Yes, sir. Q. Why not? A. I couldn't use the extractor on that new cork because the cork had to be pulled out and replaced.

The record of the evidence is not very satisfactory. The tools were exhibited in evidence and the method of their use was indicated. We are without the aid of the exhibits or the methods described. It does appear that, for the plaintiff's particular purpose at the time of his injury, the pinchers were the proper tool. They were mislaid, and he therefore used the vise and a soft board, which resulted in a broken bottle. Some presumption must be indulged in favor of the ruling of the trial court, from the fact that the tools were before him, and the method of their use was described in his presence. The plaintiff also introduced one witness, who testified that he had constructed a device some years ago in the form of a box, which rendered the work entirely safe. This box was used for some years by Chesterman and Lane. It had also passed out of use some years before the accident in question. Another witness testified that he had seen at one time a device in Washington, D. C., which was a safety device. He had however never seen such device in use at any other place or time. The testimony on behalf of plaintiff seems to show conclusively that the tools furnished plaintiff were the ordinary tools for that kind of work. The evidence discloses no suggestion of defect in any of them. The only

charge of negligence was defective and unfit tools. We think the trial court properly directed a verdict for the defendant, and its order is therefore *Affirmed*.

LADD, C. J., and WEAVER and PRESTON, JJ., concur.